UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH HERSHEY,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                   Case No. 1:07 CV 1225

MARY BERGHUIS, et al.,

       Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #45); Defendants CMS and Greaser's Motion to Dismiss and/or for Summary Judgment, (dkt. #56); and Defendant Spitters' Motion to Dismiss and/or for Summary Judgment, (dkt. #67). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #45), be **granted in part and denied in part**; Defendants CMS and Greaser's Motion to Dismiss and/or for Summary Judgment, (dkt. #56), be **granted**; and Defendant Spitters' Motion to Dismiss and/or for Summary Judgment, (dkt. #67), be **granted**.


## BACKGROUND

The events giving rise to this action occurred while Plaintiff was incarcerated in the Muskegon Correctional Facility (MCF) and the West Shoreline Correctional Facility (MTF). In his *pro se* amended complaint, (dkt. #11), Plaintiff sues MTF Warden Mary Berghuis, MCF Warden Shirlee Harry, MTF Sergeant (unknown) Booth, MTF Lieutenant (unknown) Thedorff, MTF Nurse Karen

Boeve, MTF Nurse (unknown) Koches, MCF Health Unit Manager Michael Whalen, MCF Physician Assistant (unknown) Spitters, MCF Nurse (unknown) Kelly, MCF Nurse M. Hubbell, MCF Captain (unknown) Smithson, MCF Doctor Ronald Graeser, MCF Nurse (unknown) Rodriquez, and MCF Health Provider Tomas LaNore. Plaintiff also sues several Jane and John Doe employees of MTF and MCF. In addition, Plaintiff sues George Pramstaller, Director of the Michigan Department of Corrections (MDOC) Bureau of Health Care Division; Richard Russell, Assistant Director of the MDOC Bureau of Health Care Division; MDOC Director Patricia Caruso; MDOC Grievance Manager James Armstrong; Craig Hutchinson, Director of Correctional Medical Services (CMS); and CMS. The following allegations are contained in Plaintiff's amended complaint.

On July 1, 2007, while Plaintiff was incarcerated at MTF, Defendant Booth confronted Plaintiff while he was in the medication line. Booth demanded that Plaintiff produce the appropriate details for the medication line and for the cane that he was using. When Plaintiff was unable to produce the details, Booth took Plaintiff's cane and ordered him to return to his housing unit. Defendant Booth subsequently charged Plaintiff with two misconduct violations.[1]

As Plaintiff attempted to return to his housing unit, his leg "gave out" and he "crashed to the ground," injuring his right hand, elbow and knee. Booth yelled at Plaintiff to "quit faking and get up off the ground." After ten or fifteen minutes, Plaintiff got up and "limped to his housing unit." When he returned to his unit, Plaintiff asked a corrections officer to contact Health Services concerning his injuries. In response, Defendant Koches instructed Plaintiff to wash out his cuts with soap and apply

---

[1] In his amended complaint, Plaintiff does not clearly identify the nature of the misconduct violation(s) with which he was charged. Plaintiff does reference an exhibit to his complaint which indicates that he was charged with possessing contraband because he did not have a valid medical detail to have his cane. (Dkt. #11 at ¶¶ 58, 86). In support of his motion for summary judgment, Defendant Booth has submitted documents that indicate that Plaintiff was also charged with being "out of place" as a result of this particular incident. (Dkt. #46, Exhibit A, Attachment A1-A2).

band aids. Koches further advised Plaintiff to submit a medical request form if he needed further treatment.

The following day, July 2, 2007, Plaintiff requested that "Jane Doe" contact health care because his hand was swollen and he could not move it. Plaintiff also reported that "he needed his cane back." Doe instructed Plaintiff "to put in a Health Care kite. . .and [he] would be called out." On July 10, 2007, and July 30, 2007, Plaintiff submitted health care kites requesting treatment for "fracture, knee, elbow, and hand." Plaintiff's requests for treatment were denied, however, on the ground that Plaintiff's injuries were "just routine." Plaintiff was subsequently transferred to MCF.

After Plaintiff was transferred to MCF, x-rays were taken of his right hand. According to another unidentified Jane Doe health care employee, these x-rays revealed that "the only thing wrong with Plaintiff's hand was arthritis." Plaintiff disputed the test results because he believed that his pinkie finger and knuckle were dislocated. Plaintiff subsequently submitted "over 13" health care kites requesting that he be examined by a doctor or specialist. While Plaintiff was subsequently treated by medical staff on several occasions, he was never examined by a doctor.

Plaintiff claims that he was denied medical treatment in violation of his Eighth Amendment rights. He further claims that Defendants conspired to deny him medical care. In addition, Plaintiff claims that Defendants Booth and Thedorff retaliated against him for requesting medical treatment by charging him with misconducts. Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages of $350,000 and punitive damages of $100,000 from each Defendant. On March 11, 2009, the Honorable Paul L. Maloney dismissed many of Plaintiff's claims. (Dkt. #12). The remaining Defendants now move for dismissal of Plaintiff's claims and/or summary judgment.

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of a complaint by evaluating the facts asserted therein in a light most favorable to the plaintiff to determine whether the complaint states a valid claim for relief. *See Helfrich v. PNC Bank*, 267 F.3d 477, 480-81 (6th Cir. 2001). To sustain a Rule 12(b)(6) motion, the movant must demonstrate that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Furthermore, while the Court must accept as true the factual allegations in the complaint, such does not extend to legal conclusions. In this respect, the *Iqbal* Court stated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While the notice pleading standard articulated in Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.          Defendant Correctional Medical Services (CMS)**

Plaintiff sues CMS alleging that it violated his Eighth Amendment rights by denying or delaying his requests for medical treatment. (Dkt. #11 at ¶¶ 17, 65-66). Defendant CMS moves for relief on the ground that Plaintiff is seeking to hold it vicariously liable for the actions of its employees. Plaintiff has failed to respond to CMS' motion.

CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom based on CMS' alleged failure to act, as is the case here, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). The meager allegations in Plaintiff's complaint, interpreted pursuant to the aforementioned standard, are insufficient to demonstrate that Plaintiff suffered a violation of his rights "because of" a CMS policy, practice, or custom. Accordingly, the undersigned recommends that Defendant CMS' motion to dismiss be granted.

**II.          Eighth Amendment Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the official "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with Defendants' treatment decisions or asserts that he received negligent care, such fails to state a claim upon which relief may be granted. *See, e.g., Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment).

A. Defendant Booth

Plaintiff asserts that Defendant Booth took away his cane because he was unable to demonstrate that he possessed a valid medical detail for such. Plaintiff asserts that in so doing, Booth denied him medical treatment in violation of the Eighth Amendment.

In his affidavit, Defendant Booth asserts that "prisoners that have medical equipment [such as a cane] are required to have a special accommodation in writing allowing them to be in possession of the medical equipment." (Dkt. #46, Exhibit A). Plaintiff does not dispute this. Booth further asserts that at the time of the incident in question Plaintiff did not have a valid medical detail allowing him to possess a cane. (Dkt. #46, Exhibit A). Plaintiff likewise does not dispute this. Furthermore, Plaintiff has submitted no evidence that at the time of the incident in question he was suffering from a condition or impairment that a layperson such as Booth should reasonably have discerned necessitated that Plaintiff use a cane. Thus, there is no evidence that Defendant Booth knew that Plaintiff faced "a substantial risk of serious harm" if his cane was taken away. Accordingly, the undersigned recommends that Defendant Booth is entitled to summary judgment.

B.  Defendant Koches

Plaintiff asserts that after returning to his housing unit, he requested medical treatment for injuries allegedly suffered when he fell. Plaintiff claims that a corrections officer contacted Health Services on his behalf. Plaintiff then spoke with Defendant Koches who instructed him to wash out his cuts with soap and apply band aids. Plaintiff asserts that Koches' denied him medical treatment in violation of his Eighth Amendment rights.

The Court first notes that Defendant Koches seems to misinterpret the nature of Plaintiff's Eighth Amendment claim against her. In her motion, Koches asserts that she is entitled to summary judgment as to Plaintiff's Eighth Amendment claim because Plaintiff did not, as of July 1, 2007, possess a valid medical detail for the use of a cane. Plaintiff's claim against Defendant Koches, however, does not concern whether he was authorized to possess a cane on the date in question. Instead,

Plaintiff's claim concerns Defendant Koches' alleged refusal to treat injuries he suffered in a fall after his cane was taken away. With respect to this particular claim, the undersigned finds that there exists a legitimate factual dispute which precludes a grant of summary judgment.

Defendant Koches has submitted an affidavit in which she asserts that on the day in question, a corrections officer contacted her to report that Plaintiff had suffered "abrasions." (Dkt. #46, Exhibit B). Koches further asserts that she then spoke with Plaintiff, who characterized his injuries as a "superficial scrape on his knee and elbow." (Dkt. #46, Exhibit B). In response, Defendant Koches instructed Plaintiff to "wash his abrasions with soap and water." (Dkt. #46, Exhibit B). Plaintiff agrees with Defendant's version of events with one exception. Plaintiff asserts in his affidavit that he informed Defendant that he had suffered an "open wound, with a considerable amount of blood loss." (Dkt. #70). Plaintiff further asserts that he told Defendant Koches that he "thought [he] needed stitches" and that he "thought [his] hand might be broke." (Dkt. #70).

If Plaintiff's versions of events is believed, a reasonable juror could easily conclude that Defendant Koches was aware that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take *reasonable* measures in response thereto. The undersigned, therefore, recommends that Defendant Koches' motion for summary judgment as to this particular claim be denied.

C. Defendant Whalen

While Plaintiff asserts in his amended complaint the conclusion that "all" Defendants denied him medical treatment in violation of the Eighth Amendment, Plaintiff has not alleged any facts to support the allegation that Defendant Whalen denied him medical treatment or otherwise violated his Eighth Amendment rights.

The only allegations in Plaintiff's complaint regarding Defendant Whalen concern a December 2, 2008 incident. Plaintiff alleges that on that day he "had fallen down in the lobby at Health Care," after which Whalen "come out and told Plaintiff to fill out a[n] accident report." (Dkt. #11 at ¶ 75). Plaintiff further asserts that as he was later leaving the health care facility, Whalen approached him and stated "we are all done with you will be riding out of here and good luck." (Dkt. #11 at ¶ 76). Pursuant to the standard articulated above, the undersigned finds that these allegations fail to state a claim for violation of Plaintiff's Eighth Amendment rights. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendant Whalen be dismissed.

D.  Defendant Kelly

Plaintiff's allegations against Defendant Kelly concern three alleged incidents. First, Plaintiff asserts that "on one occasion," while he was waiting to be examined by a doctor, Plaintiff asked Kelly "how much longer it would be to see the doctor." (Dkt. #11 at ¶ 65). Plaintiff alleges that after asking this question, Defendant Kelly "made the correctional officer make Plaintiff leave Health Care." (Dkt. #11 at ¶ 65). Plaintiff has failed to indicate the date on which this alleged incident occurred. Plaintiff has also failed to allege that he was at the time suffering a severe medical impairment or that if he was suffering such an impairment, Defendant Kelly was aware of such. Accordingly, pursuant to the standard articulated above, the undersigned finds that these allegations fail to state a claim for violation of Plaintiff's Eighth Amendment rights.

Plaintiff next asserts that on July 8, 2008, he "was made to leave the Health Care, by [Defendant] Kelly." In his affidavit, Defendant Kelly asserts that on the date in question, Plaintiff was scheduled to be examined by a Physician's Assistant. (Dkt. #46, Exhibit K). According to Kelly,

Plaintiff "refused to wait and wanted to leave." (Dkt. #46, Exhibit K). In his affidavit, Plaintiff asserts that on the date in question he "had a Doctor's appoint[ment], not a physician's assistant appointment." (Dkt. #70). Plaintiff asserts that after waiting "over an hour to see the DOCTOR," he "had to leave" because he was "incapable of sitting or standing for long periods of time." (Dkt. #70).

The Eighth Amendment does not entitle Plaintiff to be examined by the individual of his choosing. Moreover, absent evidence of a condition that *requires* immediate treatment (i.e., an emergency or life-threatening condition), the Constitution does not afford to Plaintiff the right to receive medical care without delay. There is neither evidence nor allegation that Plaintiff was at the time experiencing a medical emergency, suffering a life-threatening condition, or otherwise suffering from an impairment that necessitated that he be examined *immediately*. While Plaintiff may have been frustrated at having to wait "over an hour" for a medical appointment, such simply fails to implicate the Eighth Amendment. The undersigned, therefore, recommends that Defendant Kelly be granted summary judgment as to this claim.

Finally, Plaintiff alleges that on December 2, 2008, he was examined by Defendant Kelly and Defendant Graeser. (Dkt. #11 at ¶ 75). Plaintiff reported that he was experiencing groin pain, in response to which Dr. Graeser indicated that he would provide Plaintiff with "a shot of Toradol for the pain." (Dkt. #11 at ¶ 75). Plaintiff declined the shot because he had previously suffered "a reaction" to such a shot. (Dkt. #11 at ¶ 75). Plaintiff was instructed to take Tylenol instead. (Dkt. #11 at ¶ 75).

In his affidavit, Defendant Kelly asserts that Plaintiff declined the Toradol shot. (Dkt. #46, Exhibit K). Plaintiff was then instructed "to wait in the waiting room to receive a Medical Detail ordered by Dr. Graeser." (Dkt. #46, Exhibit K). Plaintiff, however, departed before obtaining the detail.

(Dkt. #46, Exhibit K). Plaintiff has submitted no evidence to the contrary. The undersigned, therefore, recommends that Defendant Kelly be granted summary judgment as to this claim.

### E. Defendant Rodriguez

Plaintiff's allegations against Defendant Rodriguez concern two incidents. On May 27, 2008, Rodriguez attempted to give Plaintiff the wrong medication. (Dkt. #11 at ¶ 73). When Plaintiff brought this to Defendant's attention, she told Plaintiff, "if you don't take the medications that I've brought you then you will get nothing." (Dkt. #11 at ¶ 73). Plaintiff also asserts that Defendant Rodriguez "gave the Plaintiff the wrong medication" on June 26, 2008. (Dkt. #11 at ¶ 74). Plaintiff asserts that by giving him the wrong medication, Defendant Rodriguez denied him appropriate medical care in violation of the Eighth Amendment.

In support of her motion for summary judgment, Defendant Rodriguez has submitted an affidavit in which she asserts that her "duties on the dates in question did not include the medication line." (Dkt. #46, Exhibit D). Rodriguez further asserts that "[t]he nurses only give medications that are ordered to the inmates. We do not use other prisoners' medications." (Dkt. #46, Exhibit D). Defendant Rodriguez has also submitted copies of a "Medication Administration Record" which purports to demonstrate that Plaintiff was provided certain medications on the dates in question. (Dkt. #46, Exhibit D, Attachments D1 and D-2). In his affidavit, Plaintiff asserts that Defendant Rodriguez "was in fact at the med line window, and did in fact give me the wrong meds" on the dates in question. (Dkt. #70). Plaintiff further asserts that this was "not by chance or as she has made an honest error." (Dkt. #70).

Defendant Rodriguez has failed at this juncture to demonstrate the absence of a genuine issue of material fact concerning Plaintiff's claims. If the assertions in Plaintiff's affidavit are believed,

a reasonable juror could conclude that Defendant Rodriguez violated Plaintiff's Eighth Amendment rights by failing to provide him prescribed medication. Accordingly, the undersigned recommends that Defendant Rodriguez is not entitled to summary judgment.

    F. Defendant Spitters

Plaintiff alleges that Defendant Spitters, a physician's assistant, "claimed he's a doctor." (Dkt. #11 at ¶ 72). Plaintiff further asserts that on an unspecified occasion, Defendant Spitters "refused to look in [Plaintiff's medical] file to see what was going on, nor would the PA look to see what the Hackley Hospital recommendations were as Plaintiff tried to tell the PA that the Hospital said a MRI was needed, and ordered new pain medications." (Dkt. #11 at ¶ 72).

Defendant Spitters has submitted an affidavit in which he asserts that he has never claimed to be a doctor. (Dkt. #67, Exhibit R). Defendant Spitters asserts that he examined Plaintiff on several occasions and reviewed Plaintiff's medical records as necessary. (Dkt. #67, Exhibits D-T). Defendant Spitters further asserts that he did not disregard any recommendations made by care providers at Hackley Hospital. (Dkt. #67, Exhibit R). Plaintiff has failed to respond to Defendant Spitters' motion for summary judgment. In light of the evidence submitted by Defendant Spitters, the undersigned recommends that he is entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

    G. Defendant Graeser

As previously noted, Plaintiff alleges that on December 2, 2008, he was examined by Defendant Graeser and Defendant Kelly. (Dkt. #11 at ¶ 75). Plaintiff reported that he was experiencing groin pain, in response to which Dr. Graeser indicated that he would provide Plaintiff with "a shot of

Toradol for the pain." (Dkt. #11 at ¶ 75). Plaintiff declined the shot because he had previously suffered "a reaction" to such a shot. (Dkt. #11 at ¶ 75). Plaintiff was instructed to take Tylenol instead. (Dkt. #11 at ¶ 75).

In support of his motion for summary judgment, Defendant Graeser has submitted a copy of his treatment notes concerning this incident. (Dkt. #56, Exhibit E). According to the doctor's treatment notes, Plaintiff was offered, but declined, a Toradol shot due to a suspected allergy thereto. (Dkt. #56, Exhibit E). The doctor then offered to provide Plaintiff with "tylenol and nsaids [non-stroidal anti-inflammatory medication]," but Plaintiff refused stating, "I can get that in my house." (Dkt. #56, Exhibit E). Plaintiff has failed to respond to Defendant Graeser's motion for summary judgment. In light of the evidence submitted by Defendant Graeser, the undersigned recommends that he is entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

**III.        Retaliation Claim**

As indicated above, following a July 1, 2007 incident between Plaintiff and Defendant Booth, Plaintiff was charged with two misconduct violations: (1) possessing contraband and (2) being out of place. Plaintiff alleges that Defendant Booth charged him with these misconduct violations in retaliation for having requested medical treatment. Defendant Booth moves for summary judgment as to these claims.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the

adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff alleges that he was charged with the misconduct violations because he had requested medical treatment and that as a result of such retaliatory conduct he was denied parole. Defendant does not dispute that Plaintiff requested medical treatment or that Plaintiff was later denied parole. Accordingly, the undersigned finds that there exist legitimate factual questions regarding the first two elements of the analysis.

Plaintiff must, however, also establish that the adverse action taken against him was motivated, at least in part, by his protected conduct. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial. As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if Defendant demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Defendant Booth asserts in his affidavit that Plaintiff was charged with possession of contraband because Plaintiff did not have a valid medical detail to possess a cane. (Dkt. #46, Exhibit A). As previously noted, Plaintiff does not dispute this. Booth further asserts that Plaintiff was charged

with being out of place because he did not have a "callout" to be at the health services window at the time in question. (Dkt. #46, Exhibit A). Plaintiff does not dispute that his callout had expired when he was approached by Defendant Booth. (Dkt. #70). Defendant has demonstrated that Plaintiff was charged with the misconduct violations in question for reasons unrelated to Plaintiff's request for medical treatment. Plaintiff, on the other hand, merely asserts "bare allegations of malice" and has failed to present evidence from which retaliation can plausibly be inferred. The undersigned, therefore, recommends that Defendant Booth be granted summary judgment as to Plaintiff's retaliation claim.

### IV.     Conspiracy Claims

Plaintiff asserts that "all" Defendants conspired to deny him appropriate medical treatment in violation of his constitutional rights and federal law. Plaintiff has failed, however, to allege any facts in support of these claims. As discussed above, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Moreover, while the Court must accept as true the factual allegations in Plaintiff's complaint, such does not extend to legal conclusions. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Plaintiff has alleged nothing more than a legal conclusion unsupported by any factual allegations. Accordingly, the undersigned recommends that Plaintiff's conspiracy claims be dismissed for failure to state a claim.

### V.     Constitutional Oath Claims

Plaintiff also asserts that Defendants violated their "U.S. Constitutional Oath" by failing to comply with laws requiring that Plaintiff receive proper medical treatment and forbidding retaliation

and conspiracy. This is nothing more than a reiteration of the other claims in Plaintiff's complaint which are discussed in detail above. Therefore, the undersigned recommends that these claims be dismissed for failure to state a claim.

**VI.        Doe Defendants**

In his complaint and amended complaint, Plaintiff sues several unnamed individuals, identified simply as Doe Defendants. Plaintiff has failed to effect service on these individuals. Moreover, in the more than 24 months that has elapsed since Plaintiff initiated this action, he has not requested assistance from the Court or anybody else to identify or effect service upon these individuals.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence, the undersigned recommends that Plaintiff's claims against the unidentified Doe Defendants be dismissed without prejudice for failure to timely effect service.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #45), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants Koches and Rodriguez go forward, but that Defendants Kelly, Rodriguez, Whalen, Koches, and Booth are otherwise entitled to the relief sought.

The undersigned further recommends that <u>Defendants CMS and Greaser's Motion to Dismiss and/or for Summary Judgment</u>, (dkt. #56), be **granted**; and <u>Defendant Spitters' Motion to Dismiss and/or for Summary Judgment</u>, (dkt. #67), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

    Respectfully submitted,

Date: January 20, 2010     /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge